UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHENA BERRY,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>DISTRICT OF COLUMBIA,<br><br>　　　　　　　　Defendant. | Case No. 24-cv-2888 (JMC) |

## MEMORANDUM OPINION

Plaintiff Sheena Berry, on behalf of her minor daughter C.B., moves for a preliminary injunction to prevent Defendant District of Columbia from violating the Individuals with Disabilities Education Act's (IDEA's) "stay-put" provision. ECF 1; ECF 3.[1] Because the District has agreed to maintain C.B.'s educational placement in compliance with stay-put, the Court will **DISMISS** Ms. Berry's motion for preliminary injunction, ECF 3, as moot.

## I.   BACKGROUND

C.B. is a third grader at Hyde-Addison Elementary School. ECF 1 ¶ 4. She has apraxia of speech, a neurological speech-language disability, and is eligible for special education services under the IDEA. *Id.* ¶¶ 4, 10; *see* 20 U.S.C. § 1412. Her last-agreed upon Individualized Education Program (IEP),[2] which became operative in November 2023, provides for a part-time special education placement: C.B. receives 12 hours per week of specialized instruction in a resource

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] An IEP is an educational plan developed by a team of school officials, teachers, and parents. *See Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 523 (D.C. Cir. 2019). It is the "primary vehicle" for securing a student's rights under the IDEA. *Id.* (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).

room, and otherwise receives instruction in a general education classroom. ECF 1 ¶¶ 17–20; *see* ECF 1-5.

The District held an IEP meeting in May 2024 and proposed to move C.B. to a full-time special education placement, in which C.B. would spend all of her instructional time in a self-contained special education classroom. ECF 1 ¶¶ 23–30; *see* ECF 1-6. Ms. Berry opposed the full-time placement and did not sign the proposed IEP. ECF 1 ¶ 31; *see* ECF 1-7. When the 2024-25 school year began, however, the District did not attempt to move C.B. to a full-time special education placement. ECF 1 ¶¶ 32–36. C.B. enrolled at and attended Hyde-Addison for the first month of the school year. *Id.* ¶ 36.

On September 23, 2024, the District sent Ms. Berry a letter stating that C.B. would be reassigned to a self-contained special education classroom at Lafayette Elementary School. *Id.* ¶ 37; ECF 1-8. Ms. Berry met with C.B.'s IEP team at Hyde-Addison on September 27. ECF 1 ¶ 39; *see* ECF 1-9. The District told Ms. Berry that it believed a full-time special education placement was appropriate, that C.B. must report to Lafayette Elementary, and that she would not be allowed back into Hyde-Addison. ECF 1 ¶¶ 40–41; *see* ECF 1-9.

On October 9, 2024, Ms. Berry filed an administrative due process complaint challenging the District's decision to move C.B. from a part-time to a full-time special education placement. ECF 1 ¶ 43; ECF 1-10. The IDEA provides that "during the pendency of any proceedings conducted pursuant to [the IDEA]," such as due process proceedings, "the child shall remain in the then-current educational placement." 20 U.S.C. § 1415(j). This important procedural protection, known as the IDEA's "stay-put" provision, "strip[s] schools of the *unilateral* authority they . . . traditionally employed to exclude disabled students . . . from school." *Olu-Cole*, 930 F.3d at 524 (quoting *Honig*, 484 U.S. at 311). The parties do not dispute that C.B.'s "then-current

2

educational placement" is the placement provided for in the November 2023 IEP: a part-time special education placement at Hyde-Addison Elementary. *See* ECF 3 at 11–12; ECF 7 at 3–4; *G.B. v. District of Columbia*, 78 F. Supp. 3d 109, 113 (D.D.C. 2015) ("[W]hen a plaintiff has challenged the student's educational placement in place at the time the 'stay-put provision' is invoked, courts traditionally treat the IEP in place prior to the challenged IEP as the controlling IEP for purposes of the 'stay-put provision.'"). However, Ms. Berry alleges that on October 9—the same day that she filed her administrative complaint, triggering stay-put protections—"a District official emailed Ms. Berry that C.B. must report to her new placement at Lafayette." ECF 1 ¶ 62.

Ms. Berry filed this suit on October 10, 2024, and moved for a preliminary injunction to prevent the District from transferring C.B. to a full-time special education placement at Lafayette in violation of stay-put.[3] ECF 1; ECF 3. On October 11, 2024, Hyde-Addison's special education coordinator, Roger Yohn, emailed Ms. Berry and her counsel. ECF 7 at 2; ECF 7-2 at 2–3. Mr. Yohn explained that D.C. Public Schools (DCPS) had received Ms. Berry's due process complaint on October 9, triggering stay-put, and would therefore maintain the placement provided for in C.B.'s November 2023 IEP—namely, a part-time special education placement at Hyde-Addison—while Ms. Berry litigated her due process complaint. ECF 7 at 2; ECF 7-2 at 2–3. Mr. Yohn attached a Prior Written Notice (PWN), formally providing that DCPS would maintain C.B.'s November 2023 IEP placement during the pendency of the litigation. ECF 7 at 2; ECF 7-3 at 1–2.

---

[3] Ms. Berry simultaneously moved for a temporary restraining order (TRO). ECF 2. The Court denied that motion as moot, without prejudice, on October 21, 2024 because (1) the District "ha[d] provided a Prior Written Notice indicating that it will not change C.B.'s placement in the immediate future," Oct. 21, 2024 Minute Order, and (2) the Court had instituted an administrative stay while awaiting briefing, Oct. 15, 2024 Minute Order. The Court therefore concluded that the temporary relief a TRO would afford was no longer necessary. *See* Oct. 21, 2024 Minute Order.

## II.  ANALYSIS

In her motion for preliminary injunction, Ms. Berry asks that this Court order the District to allow C.B. to attend the part-time special education placement provided for in her November 2023 IEP. *See* ECF 3. She has now received that relief: the District has come into compliance with stay-put by allowing C.B. to resume her part-time special education placement at Hyde-Addison and representing that it will maintain that placement while Ms. Berry litigates her due process complaint on the merits. *See* ECF 7; ECF 10. Because "[t]he remedy the Court could have issued would be one requiring the [District] to do what it has already done," *Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 11 (D.D.C. 2019), the Court will deny Ms. Berry's motion for preliminary injunction as moot.

Ms. Berry argues that the voluntary cessation exception to mootness applies. *See* ECF 8 at 2. It is true that, in general, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). However, a claim nonetheless becomes moot "if subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)). As explained below, the Court finds that it is "absolutely clear" that the District will not violate stay-put, and therefore the voluntary cessation exception to mootness does not apply.

The District has provided Ms. Berry a Prior Written Notice (PWN) formally establishing that it will comply with stay-put.[4] ECF 7-3. A PWN is a legal document, which the school district or relevant public agency is required to provide before it either proposes or refuses to change a child's placement. *See* 34 C.F.R. § 300.503(a). This might be a different case if a DCPS employee had merely told Ms. Berry that the District would not move C.B.—but here, the PWN makes it "absolutely clear" that the District will not do so. *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *Concentrated Phosphate Export Assn., Inc.*, 393 U.S. at 203).

The PWN might carry less weight if there was other evidence that the District intended to violate stay-put—perhaps a history of repeated violations as to C.B., or contradictory statements or actions by DCPS officials. *See, e.g.*, *Laster v. District of Columbia*, 394 F. Supp. 2d 60, 67 (D.D.C. 2005) (finding motion for stay-put injunction was not moot where DCPS provided a declaration stating that it had submitted documentation required for student's placement, but allegedly rescinded funding authorization for that placement). But the Court finds no such evidence here. To the contrary, the period of non-compliance was very short and the District has taken no action since October 11 to suggest it might violate stay-put. *See Mendez v. N.Y.C. Dep't of Educ.*, No. 19-CV-02945, 2020 WL 6048203, at *3 (S.D.N.Y. Oct. 13, 2020) (concluding that voluntary cessation exception to mootness did not apply because "[e]ven if [the student]'s pendency rights had been violated, there is no indication in the record that there is a likelihood that this situation will recur as to [the student].").

---

[4] The Court notes that it is not readily apparent whether the District in fact expressed any intent to violate stay-put. Ms. Berry states that she filed her due process complaint on October 9 and, that same day, "a District official emailed [her] that C.B. must report to her new placement at Lafayette." ECF 1 ¶¶ 43, 62. However, the sequence of those two events is unclear, because neither party has provided this email communication to the Court. An attempt to move C.B. to Lafayette *before* Ms. Berry filed her due process complaint would not violate stay-put. However, even inferring in Ms. Berry's favor that the October 9 email was sent after DCPS received the due process complaint, the voluntary cessation exception to mootness is not applicable for the reasons enumerated here.

Ms. Berry argues that "the District has not made it absolutely clear that it will agree to maintain C.B.'s placement while she contemplates an appeal of an adverse administrative decision—or during that judicial appeal." ECF 8 at 5. But, as the District confirms, "it has long been established" in this District "that a student's entitlement to pendency placement under 20 U.S.C. § 1415(j) applies through the conclusion of any District Court proceedings" appealing an administrative decision. ECF 10 at 4 (citing *Andersen by Andersen v. District of Columbia*, 877 F.2d 1018, 1024 (D.C. Cir. 1989)). Consistent with that mandate, the District represents that it "has every intention of adhering to its obligations under 20 U.S.C. § 1415(j) through such District Court proceedings." *Id.* The Court can discern no evidence to the contrary.

In sum, the Court is persuaded that C.B. is now receiving the full protections of stay-put. If the District reneges on the representations it has made to Ms. Berry and to this Court, Ms. Berry may seek appropriate redress. However, at this stage, there is no evidence that the District will do so.

\*   \*   \*

For the foregoing reasons, Plaintiff's motion for preliminary injunction, ECF 3, is **DISMISSED**, without prejudice, as moot. It is further **ORDERED** that the administrative stay in this case is **LIFTED**. A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: November 5, 2024